UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| AVANT CAPITAL PARTNERS, LLC, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:12-CV-1194 (VLB) |
| v. | : | |
| | : | |
| STRATHMORE DEVELOPMENT COMPANY | : | |
| MICHIGAN, LLC; BEAR CREEK RETAIL | : | |
| PARTNERS II, LLC; BEAR CREEK | : | September 30, 2013 |
| PARTNERS II, LLC; and BEAR CREEK | : | |
| MANAGEMENT, INC. | : | |
| Defendants. | : | |

MEMORANDUM OF DECISION DENYING
DEFENDANTS' MOTION TO DISMISS [Dkt. #14]

I.      Introduction

The Plaintiff Avant Capital Partners, LLC ("Avant"), a New York limited liability company with its sole office and principal place of business in Greenwich, Connecticut, brings this action for breach of contract and unjust enrichment against Defendants Strathmore Development Company Michigan LLC ("Strathmore"), Bear Creek Retail Partners II, LLC ("BCRP"), Bear Creek Partners II, LLC ("BCP"), and Bear Creek Management, Inc. ("BCM").  Strathmore, BRCP, and BCP are Michigan limited liability companies with their principal places of business in East Lansing, Michigan, and BCM is a Michigan corporation with its principal place of business in East Lansing, Michigan.  The Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), lack of personal jurisdiction, and Fed. R. Civ. P. 12(b)(6), failure to state a claim upon which relief may be granted with respect to counts three to eight in the complaint.

1

For the reasons that follow, Defendants' Motion to Dismiss is DENIED.

## II.     Background

The following facts and allegations are taken from the Plaintiff's complaint. On November 23, 2010, Strathmore, a real estate management and development company that operates across the country, signed an agreement with Avant under which Avant, a real estate capital advisory firm, agreed to be Strathmore's exclusive agent for securing debt financing in the amount of approximately $5.5 million for real property known as Bear Creek Meadows Apartments in Petoskey, Michigan (the "Property"). [Dkt. #1, Compl. at ¶ 8.] Under the agreement, Avant was required to perform several services for Strathmore from its office in Connecticut, including researching and securing various financial lenders, sending a compiled list of the lenders to Strathmore for approval, and ultimately securing financing for the Property. [*Id.* at ¶¶ 10- 12.] In return, Strathmore agreed to pay the Plaintiff a fee of 0.75% of the total loan amount secured for the financing of the Property from any of the approved financial lenders. [*Id.* at ¶ 13.] The agreement permitted Avant the exclusive right to secure such financing until December 1, 2012. [*Id.* at ¶ 12.] In December 2010, Avant had completed its initial search for lenders and sent Strathmore a list of several options; the list included Cantor Fitzgerald and Basis Investment Group as potential investors. [*Id.* at ¶¶ 14, 17.] On December 1, 2010, Strathmore replied to Avant with a list of its approved lenders, and Avant immediately sent loan request profiles to some of those that were approved. [*Id.* at ¶ 16.] At this point, however, unbeknownst to Avant, Strathmore directly contacted a lender identified by Avant, Cantor

2

Fitzgerald, to negotiate financing for the Property.  [*Id.* at ¶ 18.]  The deal with Cantor Fitzgerald fell through, and Strathmore then independently and without Avant's consent or knowledge contacted a second lender identified by Avant, Basis Investment Group, a New York based company, to secure funding.  [*Id.* at ¶¶ 18-19.]

In facilitation of the financing, Strathmore, through its president and manager Scott A. Chappelle, organized and registered BCRP and BCM on or about April 23, 2012, with the explicit purpose of "utilizing said entities to enter into a mortgage agreement with Basis Real Estate Capital II, LLC, a real estate lender and subsidiary/entity within Basis Investment Group . . ." for the Property and for additional commercial real estate in close proximity to the Property.  [*Id.* at ¶ 21.]  Also at that time, Mr. Chappelle amended the Articles of Organization for BCP to reflect that identical business purpose.  [*Id.* at ¶ 22.]  Strathmore, BCRP, BCM, and BCP were all operated by and through their sole president and manager, Mr. Chappelle, and they all had the same business address, "c/o Strathmore Development Company, 1427 W. Saginaw Street, Suite 150, East Lansing, MI 48823," and the same business purpose listed in their Articles of Organization.  [*Id.* at ¶¶ 2-6, 25.]

Around May 17, 2012, Strathmore and Basis Real Estate Capital II, LLC closed on a future advance mortgage agreement for the Property in the amount of $18,400,000.  [*Id.* at ¶ 23.]  The mortgage agreement lists the individual and collective borrowers as BRP and BCRP, and their managing member, BCM.  [*Id.* at ¶ 24.]  After learning of the agreement that provided financing for the Property,

3

Avant sent a demand letter to Strathmore asking for the payment of $138,000, according to their contract, but Strathmore refused to pay the promised fee.  [*Id.* at ¶ 27-29.]

III.    **Legal Standard**

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Sarmiento v. U.S.*, 678 F.3d 147 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citations and internal quotation marks omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 556

4

U.S. at 679).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)(MRK).

A.  Personal Jurisdiction

The Defendants initially removed the case to this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332; they now challenge the Court's exercise of personal jurisdiction over them.  [Dkt. #14, Defendants Motion to Dismiss.]

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the

5

defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  A plaintiff facing a Rule 12(b)(2) motion to dismiss made before any discovery only needs to allege facts constituting a *prima facie* showing of personal jurisdiction. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  A plaintiff can make the requisite factual showing through its "own affidavits and supporting materials" which the Court may review and consider.  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  To establish a *prima facie* case of personal jurisdiction over a defendant, a plaintiff must satisfy a two part inquiry: "[f]irst, it must allege facts sufficient to show that Connecticut's long-arm statute reaches the defendant, and second, it must establish that the court's exercise of jurisdiction will not violate due process."  *Chirag v. MT Marida Marguerite Schiffahrts*, No. 3:12CV879(SRU), 2013 WL 1223293, at *1 (D. Conn. Mar. 26 2013) (citing *Knipple v. Viking Communications, Ltd.*, 674 A.2d 426, 428-29 (Conn. 1996).

### i.  Connecticut Long-Arm Statutes

In diversity cases, federal courts must look to the forum state's long-arm statute to determine if and when personal jurisdiction can be obtained over nonresident defendants.  *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).

#### 1.  Conn. Gen. Stat. § 52-59b and Personal Jurisdiction over Limited Liability Companies

Defendants Strathmore, BCRP, and BCP are Michigan limited liability companies; this Court has previously held, and neither party contests, that nonresident limited liability companies are subject to section 52-59b.  *Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 559 (D. Conn. 2010) (ruling that

6

foreign limited liability companies fall under the governance of Conn. Gen. Stat. § 52-59(a) rather than Connecticut's long-arm statute governing foreign corporations, Conn. Gen. Stat. § 33-929).  Section 52-59b(a) provides that "a court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association . . . who in person or through an agent . . . [t]ransacts any business within the state."  Conn. Gen. Stat. § 52-59b(a).  The statute does not provide a precise definition of what constitutes "transact[ing] any business within the state," but the Connecticut Supreme Court has interpreted the phrase to include "a single purposeful business transaction." *Zartolas v. Nisenfeld*, 440 A.2d 179, 181 (Conn. 1981); *Milne v. Catuogno Court Reporting Serv., Inc.*, 239 F. Supp. 2d 195, 202 (D. Conn. 2002)(GLG).  In determining whether a business transaction qualifies as purposeful, courts do not apply a rigid formula but rather balance "public policy, common sense, and the chronology and geography of the relevant factors."  *Harris v. Wells*, 832 F. Supp. 31, 34 (D. Conn. 1993)(WWE) (quoting *Zartolas*, 440 A.2d at 182).  Courts are instructed to examine the "nature and quality, rather than the amount of Connecticut contacts to determine whether there was purposeful activity." *Vertrue Inc. v Meshkin*, 429 F. Supp. 2d 479, 490 (D. Conn. 2006)(PCD) (citations and internal quotation marks omitted) (holding that defendant who made two business trips to Connecticut and had numerous phone and email conversations with a Connecticut corporation was subject to personal jurisdiction in District of Connecticut).

Because the claims arose in contract, the Plaintiff and Defendants cite the four relevant, but not dispositive, factors laid out by the Court of Appeals in *Agency Rent A Car Sys., Inc. v Grand Rent a Car Corp.,* to determine whether a contract can serve as the basis for personal jurisdiction: (1) "whether the defendant has an on-going contractual relationship with a [Connecticut] corporation;" (2) "whether the contract was negotiated or executed in [Connecticut] and whether, after executing a contract with a [Connecticut] business, the defendant visited [Connecticut] for the purpose of meeting with parties to the contract regarding the relationship;" (3) "what the choice-of-law is in any such contract;" and (4) "whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state." 98 F.3d 25, 29 (2d Cir. 1996). In answering this question, Courts must consider the totality of the circumstances in arriving at a fair conclusion. *Id.*

First, as discussed above, the Connecticut Supreme Court has held that a single purposeful business transaction can create a contractual relationship with Connecticut sufficient to warrant an exercise of personal jurisdiction by Connecticut courts. *Zartolas*, 440 A.2d at 181. Here, Avant has alleged that the contract it formed with Strathmore required Avant to perform substantial services from its office in Connecticut including researching and soliciting various real estate finance lenders, providing the list of initial lenders to Strathmore, and securing financing for the Property from an approved lender. [Dkt. #1, Plaintiff's Complaint, at ¶ 8.] The Plaintiff has also averred that as part of the solicitation

8

process, it had a team of "three full time staff members dedicated to the project" to help complete an "in-depth review of and to underwrite the [Property's] financial history provided by Strathmore." [Dkt. #18-2, Declaration of Adam Luysterborghs, at ¶ 11.] This financial analysis was then sent to various lenders as a loan summary to help encourage financing. [*Id.* at ¶ 12.] Overall "[e]xtensive and exhaustive man hours and resources were devoted by Avant in performing under the contract and financing was vigorously pursued by active communications with the several approved lenders." [*Id.* at ¶ 17.] Aside from this in-depth financial analysis, the contract also required Avant to provide "regular progress reports" to Strathmore regarding the Plaintiff's progress in locating and securing financing. [Dkt. # 18-2, Exhibit B.] Clearly, the intent of the contract was that Avant would perform continuing services over the course of several months from its only office location in Connecticut and keep Strathmore apprised of its ongoing activities. As payment, Avant was to receive substantial revenue from the secured financing. The nature of the contract and Avant's performance of its obligations, therefore, made Connecticut more than "merely incidental," as the Defendants argue, but substantially integrated in the contract's execution. [Dkt. #23, Defendants' Reply Memorandum of Law in Support of Motion to Dismiss, p. 4.]

Strathmore argues, however, that the agreement with Avant was more akin to a contract for goods, not services, because it only required Avant to locate and deliver a source of financing; accordingly, it argues that the "the full performance of the . . . Agreement on [Avant's] part could . . . have come from anywhere, and

9

the location of Strathmore was in Michigan, the only obvious place for [Avant's] ultimate performance to be rendered is Michigan . . . ."  [Dkt. #15, Defendants' Memorandum of Law in Support of Motion to Dismiss, p. 13.]  In support of this position, Strathmore argues that this contractual relationship is identical to that in *Lifecare, Inc. v. Lipton Corp. Child Care Ctrs., Inc.*, No. AANCV075004429, 2008 WL 271660 (Conn. Super Ct. Jan 11, 2008).  In *Lifecare, Inc.*, the plaintiff was a Delaware corporation with offices in Connecticut that provided backup childcare services for employees of its defendant clients in New York and the Washington D.C.  *Id.* at *9.  Granting the motion to dismiss for lack of personal jurisdiction, the court found that the plaintiff's location in Connecticut was only incidental to the contract because the contract was substantially performed in New York and Washington D.C. as that is where the services were rendered.  *Id.*

In our case, however, the contract does not provide for the services to be rendered in a state other than Connecticut. In fact, it clearly contemplated that that Avant would perform services from its only office in Connecticut.  The Defendants' claim that Avant was only required to find and deliver a financial lender is disingenuous at best because, as discussed above, Avant was required to provide periodic progress reports, conduct an in-depth financial analysis of the Property, and locate and market the Property to various lenders before Strathmore would approve any lenders.  [Doc #15, Defendants' Memorandum of Law in Support of Motion to Dismiss, p. 15-16]; *see also McLenitban v. Bennington Cmty. Health Plan*, 223 A.D.2d 777, 778 (N.Y. App. Div. 1996) ("As a broad generalization, a nondomiciliary who enters [the forum state's] service

economy pursuant to a contract is more likely to be deemed to be transacting business in [the forum state] than is one who performs services out of State for [the forum state's] residents on a random basis.")

The parties' contractual relationship is more similar to that in *Pro Performance Corp. v. Goldman*, 47 Conn. Supp. 476 (Conn. Super. Ct. 2002). There, the court denied the nonresident defendant's motion to dismiss for lack of personal jurisdiction because the contract, which required the plaintiff to locate super bowl tickets from its offices in Connecticut, created a purposeful business transaction in Connecticut. *Id.* at 483. Even though the Super Bowl took place in another state and the plaintiff's eventual delivery of tickets was to the defendant in Florida, the court found that the services rendered by defendant in Connecticut related to locating the actual tickets had created sufficient "purposeful Connecticut-related activity . . . to locate [the defendant's] transaction . . . within this state" under Conn. Gen. Stat. § 52-59b(a). *Id.* Just as in that case, Avant's contractual obligations, to which it devoted three staff members full time for several months, to review and underwrite a real estate investment, identify potential financiers, and secure millions of dollars of financing for a substantial fee was a purposeful business transaction to which Avant's Connecticut office was integral, if not essential.

The second *Agency Rent A Car Sys. Inc.* factor also favors a finding that the contract between Avant and Strathmore subjects the Defendant to Connecticut's jurisdiction because the contract was executed in this state. In "Connecticut, 'a contract is considered made when and where the last thing is

11

done which is necessary to create an effective agreement.'"  *Chem. Trading, Inc. v. Manufacture de Produits Chimiques de Tournan*, 870 F. Supp. 21, 23 (D. Conn. 1994)(PCD) (quoting *Electric Regulator Corp. v. Sterling Extruder Corp.*, 280 F. Supp. 550, 554 (D. Conn. 1968)).  Both Michigan and Connecticut require "mutual understanding of the terms that are definite and certain between the parties," or "meeting of the minds," to form a valid and binding contract.  *See Geary v. Wentworth Labs.*, 60 Conn.App. 622, 627 (2000) *(citing, L & R Realty v. Conn. Nat'l Bank*, 53 Conn.App. 524, *cert. denied*, 250 Conn. 901 (1999)); *Port Huron Educ. Ass'n, MEA/NEA v. Port Huron Area Sch. Dist.*, 452 Mich. 309, 329-30 (1996).  Here, Avant has alleged that the contract was initially sent to Strathmore around November 22, 2010, and Strathmore altered several of the contract's material terms, signed the agreement, and returned the edited contract to Avant at its office in Connecticut.  [Dkt. #18-2, Declaration of Adam Luysterborghs, at ¶ 7, Exhibit B.]  Avant then countersigned the agreement in Connecticut and returned the executed version to Strathmore.  [Dkt. #18-2, Declaration of Adam Luysterborghs, at ¶ 7; Dkt. # 15-2, Declaration of Scott A. Chappelle, at ¶ 11.]  The amended terms make clear that when Strathmore sent the edited contract to Avant, it was proposing a counteroffer because several of the material terms were changed, such as when Avant would actually be paid its fee.  [Dkt. #18-2, Exhibit B.]  Therefore, the final meeting of the minds did not occur until Avant's representative countersigned Strathmore's amended contract in Connecticut.

The Defendants argue, however, that none of their representatives actually went to Connecticut at any point while the contract was being, negotiated,

executed, or performed.  [Dkt. # 15-2, Declaration of Scott A. Chappelle, at ¶ 28.]
As the Defendants correctly assert, it is not sufficient for jurisdictional purposes
that a defendant merely occasionally contact a plaintiff in Connecticut through
email or telephone conversations.  *See Bross Utils. Service Corp. v. Aboubshait*,
489 F. Supp. 1366, 1371-72 (D. Conn. 1980), *aff'd mem.*, 646 F.2d 559 (2d Cir.
1980).  Avant, however, has not just alleged a few instances of electronic or
telephonic communication, it has provided telephone records and several emails
demonstrating that the Defendants contacted Avant in Connecticut consistently
and repeatedly over the course of several months.  [Dkt. #18-2, Exhibits A, C, D,
G.]  These communications do not show a mere incidental relationship with
Connecticut, but rather Strathmore's consistent affirmative conduct "allowing or
promoting the transaction of business within" Connecticut.  *Health Communs.,
Inc. v. Chicken Soup for the Soul Publ'g, LLC*, No. X05CV084014539S, 2009 WL
579227, at *22 (Conn. Super. Ct. Feb. 6, 2009).

Finally, even though the remaining *Agency Rent A Car Sys. Inc.* factors do
not assist the analysis because the relationship at issue is not that of a
franchisor-franchisee and the contract had no choice of law provision, it is
noteworthy  that the Defendants initially solicited business from Avant, not vice
versa.  [Dkt. #15-3, Affidavit of Paul Bahra, at ¶ 5; Dkt. #18-2, Declaration of Adam
Luysterborghs, at ¶¶ 5, 6.]  Several courts have found that an important factor in
determining whether a defendant has transacted business in Connecticut is
whether it affirmatively solicited business from a Connecticut plaintiff.  *See, e.g.,
Lifecare, Inc.,* 2008 WL 271660, at *4-5.  If so, it is much more likely that the

defendant purposefully availed itself of the rights and privileges of conducting business in Connecticut than if it was solicited by a Connecticut plaintiff.

Examining the totality of the circumstances, the Court finds that the Defendants purposefully and intentionally solicited the professional financial services of a Connecticut company and contracted for those services in Connecticut.  The Connecticut company had reason to believe it would be paid a large fee for providing those services.  Moreover, the company dedicated a team of three full-time staff members working in its Connecticut office over a course of several months to perform the contract.  During the course of the contract's performance, Strathmore or its agents repeatedly and consistently conducted business telephonically in Connecticut with Avant.  Taken together the facts support the conclusion that a contract for a purposeful business transaction was made by the Defendant and substantially performed by the Plaintiff in Connecticut.  The Defendants, therefore, took sufficient affirmative steps to conduct and promote significant business within the state of Connecticut and are subject to Connecticut's long-arm jurisdiction.

### 2. Conn. Gen. Stat. § 33-929(f) and Personal Jurisdiction over Foreign Corporations

Unlike the other Defendants, BCM is a Michigan corporation, not a limited liability company, and thus it is subject to personal jurisdiction under a different long-arm statute.  Section 33-929(f) provides that every foreign corporation shall be subject to suit in Connecticut arising "[o]ut of any contract made in this state or to be performed in this state."  Conn. Gen. Stat. § 33-929(f).

As discussed above, the Court views the contract between Avant and Strathmore to have been "made" in Connecticut. Therefore, this alone could subject the Defendant and its agents to long arm jurisdiction. However, even if the contract was not executed here, the Court finds that it was "performed" here.

Under Section 33-929(f) "courts have found jurisdiction only where (1) the contract expressly contemplated or required performance in Connecticut, or (2) the plaintiff has actually performed its obligations in Connecticut and such performance was the most substantial part of the obligations to be performed under the contract." *Thornton & Co. v. Lindamar Indus., Inc.*, No. 3:11-cv-375(JCH), 2011 WL 6140891, at *3 (D. Conn. Dec. 9, 2011) (citations and internal quotation marks omitted). Based on the discussion above, it is clear that even though the contract was silent as to the locus of performance, Avant had only one office and it was located in Connecticut, and the Defendants repeatedly called that office in pursuance of the contract. Further, the Plaintiff performed substantially all of the acts required to perform the contract, and it performed those acts in Connecticut. In fact, the only act not performed in Connecticut was Strathmore's approval of the financiers recommended to it by Avant. [Dkt. #18-2, Exhibit B.] Therefore, Avant's obligations were the most substantial part of the contract's requirements.

The Defendants cite *Thornton* in support of their proposition that Avant's location is not relevant to the agreement's performance. 2011 WL 6140891. *Thornton* concerned a Connecticut-based plaintiff selling goods to the defendant in California; the orders for the goods were placed with a California sales agent,

and the goods were then delivered to the defendant in California. *Id.* at *3. Specifically, the court held that when the contract at issue was one for the delivery of goods, merely performing the administrative tasks in Connecticut related to the products' delivery is insufficient to subject a nonresident defendant to Connecticut's jurisdiction. *Id.* The Defendants' reliance on a case dealing with a sale of goods is unavailing. Here, the contract was one for services, and it required substantial performance by the Plaintiff not of administrative tasks, but of the tasks comprising nearly the totality of the agreement. The Plaintiff has alleged that it organized preliminary lists of possible lenders from Connecticut, that it conducted an in-depth financial analysis in Connecticut, and that it provided the requisite progress reports to the Defendants from Connecticut. [Dkt. #18-2, Declaration of Adam Luysterborghs, at ¶¶ 8-14.] These services are clearly substantial and sufficient enough to trigger the relevant long-arm statute.

### ii.   Due Process Considerations

Having established that all the Defendants are subject to Connecticut's relevant long-arm statutes, the Court must now determine whether its exercise of jurisdiction would violate constitutional due process principles.

In so doing, the Court must consider whether the Defendants have sufficient contact with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The purpose of this requirement is to protect "an individual's liberty interest in not being subject to the binding

16

judgments of a forum with which he has established no meaningful contact, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). "The test to be applied in considering the reach of personal jurisdiction is whether (1) the nonresident party has created a substantial connection to the forum state by action purposefully directed toward the forum state . . . and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and substantial justice." *Id.* at 639.

The minimum contacts prong of this inquiry is analyzed both under specific jurisdiction, which exists where a state "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum," and under general jurisdiction, which "is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.* at 640. Given the allegations in this case, the Defendants have insufficient contacts for Connecticut courts to exercise general jurisdiction, so the Court must determine if the minimum contacts requirement has been satisfied under its specific jurisdiction.

### 1.  Minimum Contacts

To exercise specific jurisdiction over a defendant, the plaintiff's action must be related to the defendant's contacts within the forum, and "the requisite 'minimum contacts' must be such that [the defendant] can 'reasonably anticipate' being haled into court in the forum state." *Vertrue Inc.*, 429 F. Supp. 2d at 495

(citations omitted); *see also Burger King Corp.*, 471 U.S. at 474 (holding that defendant must have enough contacts with the forum state so that court's exercise of personal jurisdiction over defendant's conduct in connection with the state should be reasonably foreseeable).  As with determining whether a defendant has transacted business in Connecticut under the state's long-arm statutes, the minimum contacts inquiry rests upon the totality of the circumstances analysis; all of the defendant's contacts within the forum state "must indicate that jurisdiction is proper."  *Grand River Enters. Six Nations, Ltd. V. Pryor,* 425 F.3d 158, 166 (2d Cir. 2005).  Even a single act, if it creates a "substantial connection" with the forum state, can constitute the basis for jurisdiction.  *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).  Most importantly for this inquiry is whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Vertrue Inc.*, 429 F. Supp. 2d at 495 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Strathmore argues that it did not purposefully avail itself of transacting business in Connecticut because any services that Avant performed in the forum were done unilaterally as Strathmore did not require nor care where Avant's contractual obligations were performed.  [Dkt. # 15, Defendants' Memorandum of Law in Support of Motion to Dismiss, p. 18.]  Whether Strathmore required or cared where Avant's contractual obligations were performed is beside the point. The Plaintiff alleges that Strathmore availed itself of transacting business in Connecticut because it solicited professional services in Connecticut from a

18

company doing business in Connecticut.  It contracted for professional services in Connecticut.  It knew the professional services were being performed in Connecticut, and it made regular telephone calls to Connecticut in connection with the performance of the contract.  [Dkt. #18-2, Declaration of Adam Luysterborghs, at ¶ 18.]  Indeed, as the telephone records demonstrate, Strathmore, or one of its agents, contacted Avant at its place of business with a Connecticut area code repeatedly between November 2010 and April 2011.  [Dkt. #18-2, Exhibits A, C, G.]  Moreover, in accordance with the well-established principle that physical presence is not necessary for exercising personal jurisdiction, the Court finds it immaterial that the Defendants did not physically enter Connecticut.  Rather, by hiring a Connecticut-based company to act as its broker in a service contract for which the broker would perform substantial activities in Connecticut, Strathmore sufficiently and purposefully availed itself of the privileges of conducting business in Connecticut, thereby establishing sufficient minimum contacts for this Court to exercise jurisdiction.

### 2.  Reasonableness

Before deciding that the court has proper jurisdiction, it must finally assess "whether the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'"  *Vertrue Inc.*, 429 F. Supp. 2d at 495 (quoting *Burger King Corp.*, 471 U.S. at 475).  Even if a plaintiff has established a threshold of a defendant's minimum contacts with the forum, the exercise of jurisdiction can still be defeated if the defendant presents "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Burger King Corp.*, 471 U.S. at 477).  In analyzing whether the exercise of jurisdiction is reasonable, courts use the five factor test established by the Supreme Court in *Asahi Metal Indus. Co. v. Superior Court*: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of states in furthering substantive social policies.  480 U.S. 102, 113 (1987); s*ee also Metro Life Ins. Co.*, 84 F.3d at 568.

First, the Defendants argue that they will be unduly burdened by being forced to litigate in Connecticut.  [Dkt. #15, Defendants' Memorandum of Law in Support of Motion to Dismiss, p 19.]  Though the Court recognizes that there will certainly be some burden on the Defendants by requiring them to litigate in Connecticut, such burden should not prove unreasonable or excessive.  As the Plaintiff alleged, even though the Defendants are based in Michigan, they conduct business in other parts of the country, including Florida.  [Dkt. #1, Plaintiff's Complaint, at ¶ 7; Dkt. #18-2, Declaration of Adam Luysterborghs, at ¶ 15.]  The burden for a national company to litigate in a relatively accessible forum is negligible.  The Defendants have also already obtained counsel in Connecticut, which should diminish any additional burden going forward.

Second, "it is hardly necessary to note that Connecticut has a strong and legitimate interest in holding nonresidents accountable for contractual obligations they assume toward Connecticut residents."  *Nusbaum & Parrino,*

20

*P.C. v. Collazo De Colon*, 618 F. Supp. 2d 156, 163 (D. Conn. 2009)(CSH).

Moreover, Connecticut has a legitimate interest in resolving a dispute regarding

failure to pay a Connecticut resident for services rendered.  *See Goldstar Med.*

*Servs., Inc. v. Berkshire Healthcare Sys., Inc.*, CV044006087, 2005 WL 3047251,

at*4 (Conn. Super. Ct. Oct. 25, 2005).  This is particularly true where, as here, the

party seeking relief hired other individuals to perform in Connecticut the contract

at issue.

Third, Avant clearly has an extremely strong interest in litigating in

Connecticut as its only office is in Connecticut, and the witnesses it says it will

require at trial are located in Connecticut or nearby in New York.  [Dkt. #18,

Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 8, 32-33.]  Thus,

allowing the suit to proceed in Connecticut will very strongly serve Avant's

interest in obtaining convenient and effective relief.

Fourth, the efficient administration of justice would also favor adjudication

in Connecticut.  In evaluating what would be the most efficient resolution of the

controversy for the interstate justice system, courts generally consider where

evidence and witnesses are located.  *Metro. Life Ins. Co.*, 84 F.3d at 574.  Avant

avers that it intends to subpoena witnesses and/or provide documentation from

the New York City offices of third-party entities Basis Investment Group and

Cantor Fitzgerald.  [Dkt. #18, Plaintiff's Memorandum in Opposition to Motion to

Dismiss, p. 32-33.]  New York City is much closer to Connecticut than it is to

Michigan, so the witnesses will also have an interest in the case being

adjudicated in Connecticut rather than Michigan.  Moreover, the New York City

witnesses can be served under Fed. R. Civ. P. 45(b) because New York City is within 100 miles of the Defendants' counsel in New Haven, Connecticut.  Even though Avant pursued related claims against Strathmore in Michigan in 2011, such action does not affect the Court's balancing here because Avant has pleaded additional facts and new circumstances that have arisen since the dismissal of those claims.  Namely, the previous action related to a potential deal between Strathmore and Cantor Fitzgerald, while this action involves the Defendants and Basis Investment Group.  [Dkt. #18, Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 31.]  More importantly, Avant's previous claims filed in Michigan were filed as counterclaims after Strathmore filed for declaratory relief.  [*Id.*]  The Court, therefore, puts little weight on the selection of Michigan as a forum in the previous case for the present inquiry.

Fifth, the Court finds no substantive social policy involved in the adjudication of this case, so this factor does not favor either party and is not considered in the assessment.

Reviewing the results of the "reasonableness" inquiry, only the first factor (the interests of the defendant) weighs against the exercise of jurisdiction, while the second, third, and fourth factors all weigh in favor of the exercise of jurisdiction.  Additionally, the Court recognizes that when a defendant's minimum contacts and purposeful availment have been established in a forum, it should only dismiss on reasonableness grounds when the defendant "present[s] a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Metro. Life Ins. Co.*, 84 F.3d at 575 (quoting *Burger*

*King Corp.*, 471 U.S. at 477).  Here, the Defendants have not presented exceptional circumstances warranting dismissal.

### B.  Breach of Contract Claims Against BCRP, BCP, and BCM

Strathmore argues that this Court lacks jurisdiction over or should dismiss the breach of contract claims against BCRP, BCP, and BCM because these Defendants were not party to the agreement with Avant, and thus have no real connection to the dispute.  [Dkt. # 15, Defendants' Memorandum of law in Support of Motion to Dismiss, p. 19-20.]  The Plaintiff responds by arguing that it has sufficiently alleged facts on a motion to dismiss allowing the Court to treat BCRP, BCP, and BCM as being the alter ego of Strathmore, so disregarding corporate formalities is appropriate in this case.  [Dkt. # 18, Plaintiff's Memorandum in Opposition to Motion to Dismiss, p. 33-40.]

While it is axiomatic that only parties to a contract can be liable for a breach of that contract, other non-party entities may be liable for the acts and omissions of the defendant corporation if they are considered the alter ego of that corporation or if the corporate veil may be pierced.  *See Garbinski v. Nationwide Mut. Ins. Co.*, 3:10CV1191(VLB), 2011 WL 3164057, at *5 (D. Conn. July 26, 2011) *aff'd sub nom.*, *Garbinski v. Nationwide Prop. & Cas. Ins. Co,*, 12-3797, 2013 WL 3155933 (2d Cir. June 24, 2013).  Furthermore, "alter egos are treated as one entity" for jurisdictional purposes."  *Transfield ER Capt Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (citations and internal quotation marks omitted).

Therefore, if the Court is permitted to pierce the corporate veil, the Defendants' motion to dismiss cannot be sustained.

The corporate veil may be pierced if a corporation is a "mere instrumentality or agent of another corporation or individual owning all or most of its stock." *Lego A/S v. Best-Lock Const. Toys, Inc.*, 886 F. Supp. 2d 65, 79 (D. Conn. 2012)(CSH) (citations and internal quotation marks omitted). Specifically, "[c]ourts will . . . disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor . . . ." *Naples v. Keystone Bldg. & Dev. Corp.*, 990 A.2d 326, 339 (Conn. 2010) (quoting *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.*, 447 A.2d 406 (Conn. 1982)); *see also Zaist v. Olson*, 227 A.2d 552 (Conn. 1967) (allowing piercing of corporate veil when a corporation is mere instrumentality or agent of another). "The concept of piercing the corporate veil is equitable in nature," and there is no set rule as to when courts will pierce the veil. *Naples*, 990 A.2d at 340.

In Connecticut, courts can disregard the existing corporate structure and pierce the corporate veil under one of two theories: the instrumentality rule or the identity rule. *Id.* at 339. The instrumentality rule requires proof of three elements: (1) control by the first entity over the second to the point of complete domination of finances, policy, and business practice in respect to the transaction at issue such that the alter ego at the time had no separate, mind, will or existence of its own; (2) that such control was used dishonestly or unjustly to contravene the

24

plaintiff's legal rights; and (3) that such control and breach of duty proximately caused the plaintiff's injury.  *Id.* (citing *Angelo Tomasso, Inc.*, 447 A.2d at 410).  In assessing whether an entity is dominated or controlled, courts have looked at factors including "overlapping ownership, officers, directors, personnel" and "common office space, address, phones . . . ."  *Id.* (quoting *Litchfield Asset Mgmt. Corp. v. Howell*, 70 Conn.App. 133, 152-153 (Conn. App. Ct. 2002), *rev'd on other grounds*).  The identity or "alter-ego" rule is generally used to pierce the corporate veil to reach another corporation, as opposed to an individual, and requires the plaintiff to show that

> there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, [and that] an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

*Id.*  "The identity rule primarily applies to prevent injustice in the situation where two corporate entities are, in reality, controlled as one enterprise because of the existence of common owners, officers, directors or shareholders and because of the lack of observance of corporate formalities between the two entities."  *Litchfield Asset Mgmt. Corp.*, 70 Conn. App. at 156 (citations and internal quotation marks omitted); *see also Klopp v. Thermal-Sash, Inc.*, 534 A.2d 907, 908 n.3 (Conn. App. Ct. 1987) (identity doctrine primarily used to pierce the veil to reach another corporation).

The Defendants argue that since Avant failed to articulate specifically a claim for piercing the corporate veil under the instrumentality or identity rule in its complaint, the breach of contract claim against the non-party Defendants must be dismissed.  [Dkt. #23, Defendants' Reply Memorandum of Law in Support of Motion to Dismiss, p. 10.]  While it is true that Avant never succinctly expressed its veil piercing theory in its complaint, and it is well established that "[p]laintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to defendants' motion to dismiss," the Court finds that Avant has pleaded sufficient facts in its complaint to allow the inference of an alter-ego theory.  *Miley v. Hous. Auth. of City of Bridgeport*, No. 3:12CV519, 2013 WL 676105, at *8 (D. Conn. Feb. 25, 2013) (quoting *K.D. ex rel. Duncan v. White Plains School Dist.*, No. 11 CIV.6756(ER), 2013 WL 440556, at *14 n.8 (S.D.N.Y. Feb 5, 2013) (citations and internal quotation marks omitted)).

Avant has alleged that Strathmore, controlled by the sole president and manager Mr. Chappelle, organized and registered BCRP and BCM on April 23, 2012, with the explicit purpose of utilizing the entities to "enter into a mortgage agreement with basis Real Estate Capital II, LLC" for the Property.  [Dkt. #1, Plaintiff's Complaint, at ¶ 21.]  At that same time, Mr. Chappelle amended BCP's Articles of Organization to reflect an identical business purpose.  [*Id.*]  Avant further avers that each of the Defendants was completely controlled by Mr. Chappelle and that each of the non-Strathmore Defendants listed its address on the mortgage agreement as being in "c/o Strathmore Development Company." [*Id.* at ¶¶ 24-25.]  Finally, the Plaintiff alleges, and the Defendants admit, that even

though BCRP, BCP and BCM are listed as the owners of the mortgage, Strathmore was acting on behalf and through the other Defendants when it negotiated and ultimately secured the financing for both phases of the Property. [*Id.* at ¶ 26; Dkt. #15, Defendants' Memorandum of law in Support of Motion to Dismiss, p. 5.]  These allegations are sufficient to sustain a motion to dismiss under an alter ego theory because none of the Defendant corporations had an independent identity.

Defendants argue that "[Avant] has not alleged, and indeed could not allege, that any purported relationship among Strathmore and the [Non-Strathmore Defendants] has left [Avant] unable to collect any sum due from Strathmore, and that any alleged wrong has proximately caused such inability to collect . . . ." [Dkt. #23, Defendants' Reply Memorandum of Law in Support of Motion to Dismiss, p. 10-11.]  The Court disagrees, and finds that Avant's complaint permits the reasonable inference that each of the non-Strathmore Defendants was formed and used to help Strathmore evade its obligations under the contract with Avant, and that Avant suffered monetary loss "as a direct and proximate result of [each] defendant's breach of the contract."  [Dkt. #1, Complaint, at ¶¶ 10, 13, 17.]  Therefore, Avant has sufficiently pleaded valid breach of contract claims against each of the Defendants as alter-egos of Strathmore, and the Court finds that it has personal jurisdiction over all Defendants on the same grounds.

### C.  Unjust Enrichment Claims against BCP, BCRP, and BCM

The Defendants move to dismiss Avant's unjust enrichment claims against BCP, BCRP, and BCM because there was no direct relationship between these Defendants and the Plaintiff.  [Dkt. #15, Defendants' Memorandum of Law in Support of Motion to Dismiss, p. 21.]  The Defendants argue that the only party against whom Avant can maintain a claim is the other party to the contract, Strathmore.  [*Id.*]

As discussed above, the court views the Plaintiff's allegations as being sufficient at this stage to plead an alter ego theory between all the Defendants.  Accordingly, its claims against the other Defendants for unjust enrichment are sufficiently pleaded if it has sufficiently pleaded an unjust enrichment claim against Strathmore.

Unjust enrichment is a "broad and flexible remedy," and plaintiffs seeking recovery under this theory "must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."  *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (Conn. 2006) (citations and internal quotation marks omitted).  "This doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated . . . . The question is: Did [the party liable], to the detriment of someone else, obtain something of value to which [the party liable] was not entitled?"  *Town of*

28

*New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433, 451 (Conn. 2009) (citations and internal quotation marks omitted).  However, "the lack of a remedy under a contract is a precondition to recovery based on unjust enrichment . . . ." *United Coastal Indus., Inc. v. Clearhart Constr. Co.*, 71 Conn. App. 506, 512-13 (2002) (citations and internal quotation marks omitted).

Avant has alleged a breach of contract claim, and in the alternative an unjust enrichment claim.  *See Empower Health LLC v. Providence Health Solutions LLC*, No. 3:01-CV-1163(JCH), 2011 WL 2194071, at *10 (D. Conn. June 3, 2011) (suggesting that a plaintiff can plead claims for breach of contract and unjust enrichment even though an award on the former will preclude a claim for the latter).  Avant has pleaded that (1) Strathmore benefited from Avant's services by (directly or indirectly) obtaining financing for the Property and also for the other properties in proximity to the Property; (2) Strathmore "acted in bad faith and with unclean hands by seeking and negotiating financing for the property" after Avant supplied it with a list of interested lenders; and (3) that Strathmore's refusal to pay the exclusivity fee harmed Avant.  Again, viewing the facts in a light most favorable to the Plaintiff, the Court finds that Avant has sufficiently pled unjust enrichment claims in the alternative to its breach of contract claims, and these claims withstand the Defendants' motion to dismiss.

**IV.     Conclusion**

   **For the foregoing reasons, Defendants' [Dkt. #14] Motion to Dismiss is**

**DENIED.**

                                          **IT IS SO ORDERED.**


                              _____/s/_____
                              **Hon. Vanessa L. Bryant**
                              **United States District Judge**

**Dated at Hartford, Connecticut: September 30, 2013**