UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AVANT CAPITAL PARTNERS, LLC,         :<br>         Plaintiff,                                        :<br>                                                              :<br>v.                                                          :<br>                                                              :<br>STRATHMORE DEVELOPMENT COMPANY :<br>MICHIGAN, LLC; BEAR CREEK RETAIL   :<br>PARTNERS II, LLC; BEAR CREEK          :<br>PARTNERS II, LLC; and BEAR CREEK   :<br>MANAGEMENT, INC.                              :<br>         Defendants.                                  : | CIVIL ACTION NO.<br>3:12-CV-1194 (VLB)<br><br><br><br>January 9, 2015 |

**MEMORANDUM OF DECISION DENYING
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT [Dkt. #68]**

I.      Introduction

The Plaintiff Avant Capital Partners, LLC ("Avant" or "Plaintiff"), a New York limited liability company and real estate capital advisory firm with its sole office and principal place of business in Greenwich, Connecticut, brings this action for breach of contract and unjust enrichment against Defendants Strathmore Development Company Michigan LLC ("Strathmore"), Bear Creek Retail Partners II, LLC ("BCRP"), Bear Creek Partners II, LLC ("BCPII"), and Bear Creek Management, Inc. ("BCM") (collectively, "Defendants"). Strathmore, BCRP, and BCPII are Michigan limited liability companies with their principal places of business in East Lansing, Michigan, and BCM is a Michigan corporation with its principal place of business in East Lansing, Michigan. Defendants have moved for partial summary judgment in their favor as to Counts Three through Eight of Plaintiff's Complaint, which allege breach of contract and unjust enrichment

1

against BCRP, BCPII, and BCM (the "Bear Creek Defendants"). For the reasons that follow, Defendants' Motion to for Partial Summary Judgment is DENIED.

   II.   Local Rule 56 Statements

As an initial matter, the Court notes that both Plaintiff and Defendants have failed to fully comply with the Federal Rules of Civil Procedure for asserting and contesting facts on a motion for summary judgment. The Federal Rules provide that:

> . . . A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B). Rule 56(a) of the Local Rules of Civil Procedure for the District of Connecticut provides further guidance by making clear the procedure for prosecuting and opposing a motion for summary judgment. A party filing a summary judgment motion must annex a "concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." D. Conn. L. Civ. R. 56(a)(1). Local Rule 56(a)(2) further provides that a party opposing a motion for summary judgment must file an answering document which states "whether each of the facts asserted by the moving party is admitted or denied" and must also include a "list of each issue of material fact as to which it is contended there is a genuine issue to be tried." D.

Conn. L. Civ. R. 56(a)(2).  Each statement of material fact in a Local Rule 56(a)1 or Local Rule 56(a)(2) statement, as well as each denial in a summary judgment opponent's Local Rule 56(a)(2) statement, "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."  D. Conn. L. Civ. R. 56(a)(3).

The Local Rule further clarifies that "[a]ll material facts set forth in [a moving party's 56(a)(1)] statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party . . ."  D. Conn. L. Civ. R. 56(a)(1).  Where a party fails to appropriately deny material facts set forth in the moving party's 56(a)(1) statement, and where those facts are supported by evidence in the record, those facts are deemed to be admitted.  *See SEC v. Global Telecom Servs. L.L.C.*, 325 F.Supp.2d 94, 109 (D. Conn. 2004); *Knight v. Hartford Police Dep't*, No. 3:04CV969(PCD), 2006 WL 1438649, at *4 (D. Conn. May 22, 2006).  However, "in determining whether the moving party has met [ ]his burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's [Local] Rule 56[ ] statement.  It must be satisfied that the citation to evidence in the record supports the assertion."  *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  Therefore, to the extent that a movant's 56(a)(1) statement is unsupported by the evidence, the court will disregard it.  *See, e.g., Ricci v. Destefano*, No. 3:04CV1109(JBA), 2006 WL 2666081, at *3 (D. Conn. Sept. 15,

2006).  Moreover, "[t]he court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Here, Defendants' Rule 56(1)(a) Statement frequently lacks meaningful evidentiary support, and relies heavily on the conclusory and self-serving affidavit of Defendant Strathmore's president and manager, Scott A. Chappelle ("Mr. Chappelle"), without further support from the record.[1]  Plaintiff in its Opposition has identified some evidence that challenges portions of Defendants' Rule 56(a)(1) Statement, but has failed to adequately deny many of the facts that Defendants have proffered, either by failing to support its 56(a)(2) denials with citations to evidence in the record that contradicts Defendants' alleged facts, or by stating without citation that Plaintiff "is without sufficient knowledge to admit or deny" certain statements.[2]   Both 56(a) statements are incomplete in that they do not provide the Court with a full view of the events forming this action.

Thus, the Court will take as true relevant facts that are supported by admissible evidence in the record but will not credit statements or portions of statements, nor admissions of those statements, where they are unsupported by the evidence cited.  The Court will cite directly to the evidence introduced by the

---

[1] In their 56(a) Statement, Defendants assert that Bear Creek Defendants are distinct legal entities with different entity membership and separate bank accounts.  [Dkt. #68, Ex. 1 at ¶¶ 25–27.]  The only support cited to for these assertions is Mr. Chappelle's April 30, 2014 Declaration, which itself merely parrots these conclusions without citing to any record evidence that supports the claims.  [*See* Dkt. #69, Ex. 3 at ¶¶ 13, 16, 18, 24, 27, 29, 35, 39.]

[2] In its 56(a) Statement, Plaintiff consistently "denied" Defendant's asserted facts without citation to evidence, in whole or in part without supplemental facts to refute those facts.  [*See* Dkt. #70, Ex. 2, Part A at ¶¶ 3, 4–7, 9–13, 15–16, 18–19, 26.]  In other instances, Plaintiff responded that it is "without sufficient knowledge to admit or deny" Defendant's asserted facts.  [*See id.* at ¶¶ 20–21, 23, 27, 30.]

4

parties where appropriate, and will consider evidence found elsewhere in the record, including the Defendants' Answer,[3] where such evidence assists the Court in understanding the facts of this case, or where an omission of such fact would materially alter the Court's conclusions.

### III.     Factual Background

The following facts relevant to the Defendants' Motion for Summary Judgment are undisputed unless otherwise noted.  Strathmore is a real estate management and development company and licensed real estate broker that performs real estate services for various third parties, including the apartment project commonly known as Bear Creek Meadows Apartments, located at 1600 Bear Creek Lane, Petoskey, Michigan (the "Property").  [Dkt. #68, Ex. 1, Def. 56(a)(1) Stmt. at ¶1.]  On or about November 23, 2010, Strathmore, by and through its authorized president, Mr. Chappelle, entered into a contract with Avant under which Avant agreed to act as Strathmore's exclusive agent to secure debt financing services for the Property (the "Letter Agreement").  [*Id.* at ¶¶ 5–6; Dkt. #69, Def. Mem. in Support of Summary Judgment, Ex. 4-A.]  In this capacity, Avant was to complete an in-depth underwriting for the financing request; research, identify, secure and report on various capital sources; and ultimately coordinate and process the financing.  [Dkt. #69, Ex. 4-A at 1.]  In return, Strathmore agreed to pay Avant a fee of 0.75% of "any mortgage financing" of the Property.  [Dkt. #68, Ex. 1 at ¶ 7.]  The Letter Agreement stated that Avant's

---

[3] "Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout th[e] litigation." *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 491 (2d Cir. 2014)(citation omitted).

engagement as exclusive agent would expire on December 6, 2010 unless otherwise terminated, and further granted Avant a two-year period of "Limited Exclusivity . . . for all Capital Sources introduced to [Strathmore] by [Avant] for the limited purpose of the Subject Transaction[.]" [Dkt. #68 at ¶¶ 6, 8; Dkt. #69, Ex. 4-A at 1.]

On or about December 1, 2010, Avant submitted a list of financing sources and Strathmore approved that list. [Dkt. #52, Def. Answer at ¶¶ 10–11.] The list included "Cantor Fitzgerald" and "Basis Investment Group" as potential financing sources. [*Id.* at ¶ 15.] Subsequently, and for reasons that are in dispute, Strathmore negotiated with Cantor Fitzgerald and Basis Investment Group for financing without Avant's involvement. [*Id.* at ¶¶ 19–20.] Then, on or around May 2012, Strathmore ultimately engaged and secured financing for, *inter alia*, the Property described in the Letter Agreement from "Basis Real Estate Capital II, Inc." (the "Basis Loan").[4] [Dkt. #68, Ex. 1 at ¶ 18; Dkt. #52 at ¶ 23.] In addition to financing related to the residential Property that is the subject of the Letter Agreement, the Basis Loan also included financing for an adjacent commercial project. [Dkt. #68, Ex. 1 at ¶ 18; Dkt. #52 at ¶ 35.[5]]

---

[4] Plaintiff characterizes Basis Real Estate Capital II as "the retail lender and subsidiary/entity within Basis Investment Group." [Dkt. #1, Complaint at ¶ 21.] Defendants have not clearly or directly admitted or denied this fact. [Dkt. #52 at ¶¶ 21, 23.] However, Defendants do admit that Basis Investment Group has a business address at 75 Broad Street, Suite 1602, New York, New York, 10004. [*Id.* at ¶ 19.] This is the same address listed for Basis Real Estate Capital II in the Mortgage. [Dkt. #70, Ex. 3 at 2.] The Court finds that for purposes of this Motion, the Plaintiff has adequately established that the two Basis entities are under common ownership and control.

[5] Plaintiff in its counter-statement of material facts denied ¶ 18 of Defendants' 56(a)(1) statement without a citation to the record. [*See* Dkt. #70, Ex. 2, Part A at ¶

6

The mortgage security instrument executed for this financing ("Mortgage") names the co-borrowers as Bear Creek Partners II, LLC ("BCPII") and Bear Creek Retail Partners, II ("BCRP"). [Dkt. #70, Ex. 3 at 1.] The Mortgage is signed for both co-borrowers by Scott A. Chappelle as president of Bear Creek Management, Inc. [*Id.*, Ex. 3 at 23; *see also* Dkt. #52 at ¶ 24.] Co-borrower BCPII, which was first organized in 2006, amended its Articles of Organization on April 23, 2012, a few weeks before the Mortgage was executed, to state that BCPII's purpose is "to own, maintain, operate and lease certain real property commonly known as Bear Creek Meadows." [Dkt. #70, Ex. 4 at 1.] Defendants concede that this amendment was related to obtaining financing from Basis Real Estate Capital II, LLC, and that BCPII owns the Property that is the subject of the Letter Agreement. [Dkt. #52 at ¶ 22; Dkt. #68, Ex. 1 at ¶ 20.] Co-borrower BCRP, which was formed on April 24, 2012, lists a business purpose of owning retail property known as Bear Creek Crossings. [Dkt. #69, Ex. 3-C.] Defendants concede that BCRP was created to own, and now owns, this adjacent commercial property. [Dkt. #69, Ex. 4 at ¶ 20; Dkt. #52 at ¶ 35.] Bear Creek Management, Inc. ("BCM") was formed on April 23, 2012 as "a single purpose entity engaged in owning a membership interest in Bear Creek Retail Partners II LLC and Bear Creek Partners II, LLC (collectively, the "Borrower")." [Dkt. #69, Ex. 3-E at 5.] The address on the Mortgage of each borrower is listed as "c/o Strathmore Development Company, 1427 W. Saginaw Street, Suite 150, East Lansing, MI 48823." [Dkt. #70, Ex. 3 at 2;

---

18.] However, in its statement of disputed issues of material fact, Plaintiff admits this fact in sum and substance, to wit, "In addition to obtaining financing for the Property, the defendants obtained financing for additional commercial properties . . . located in close proximity to the Property." [*Id.* at Part B, ¶ 18.]

7

*see also* Dkt. #52 at ¶ 25.] This street address also appears on all three Bear Creek Defendants' Articles of Organization. [Dkt. #69, Ex. 3-C, 3-E; Dkt. #70, Ex. 4.]

Upon learning of the Basis Loan financing, Avant sent a demand letter to Strathmore asking for payment of a $138,000 fee pursuant to the Letter Agreement. [Dkt. #52 at ¶ 27.] After Strathmore refused to pay, Avant filed the current action against both Strathmore and the Bear Creek Defendants. Defendants filed a Motion to Dismiss, arguing in part that the Court should dismiss all claims against the Bear Creek Defendants because those Defendants were not party to the Letter Agreement, and thus had no connection to the dispute. [Dkt. #15 at 20–21.] However, the Court found that Avant had sufficiently alleged facts to support a claim that the Bear Creek Defendants were operating as an alter ego of Strathmore and were therefore liable for Strathmore's alleged breach. [Dkt. #47, Mem. of Decision Denying Defendants' Mot. to Dismiss at 26–29.]

Defendants have now moved for summary judgment in their favor on all counts against the Bear Creek Defendants, on the basis that Plaintiff has failed to adduce evidence sufficient to establish that the Bear Creek Defendants are liable for Strathmore's actions under a corporate veil-piercing theory. [Dkt. #69 at 8–12.] While the subject motion was still pending, Plaintiff moved for leave amend its Complaint by striking paragraph 33 in Count Two (Unjust Enrichment), in which Plaintiff alleges that "[t]he defendant STRATHMORE attempted to defraud the plaintiff and acted in bad faith and with unclean hands in creating BEAR

8

CREEK RETAIL PARTNERS II, LLC and BEAR CREEK MANAGEMENT, INC., to close on the loan, an attempt to distance STRATHMORE from the aforesaid loan agreement by name and conceal its breach of the parties' contract when, in reality, said entities were acting under the and [*sic*] authority and complete control of, Scott A. Chappelle and STRATHMORE." [Dkt. #1 at ¶ 33, p. 8.]  In its Motion, Plaintiff notes that Defendants do not consent to this amendment.  [Dkt. #75 at 1.]  Unaffected by the proposed amendment are other relevant paragraphs of the Complaint, including paragraphs 2 through 6 and 21 through 26, which allege common ownership, headquarters, business purpose and action of Defendants.

## IV. Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To be clear, the moving party bears the burden of proof on a motion for summary judgment, and in order to meet its burden must prove that no material factual issues exist.  *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am.*

*Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch-Rubin v. Sandals Corp.*, No. 3:03cv481(MRK), 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341(VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011). Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712, 726–27 (2d Cir. 2010).

V. <u>Discussion</u>

The dispositive question before the Court on Defendants' Motion for Partial Summary Judgment is whether there is a genuine issue of material fact as to whether Strathmore's corporate veil may be pierced to reach the Bear Creek Defendants. Thus, the Court notes as a preliminary matter that Defendants' attempts to argue that Avant's claims against the Bear Creek Defendants must be dismissed as "insufficient as a matter of law" because the Bear Creek Defendants

10

were not parties to the Letter Agreement are inapposite. [Dkt. #69 at 6–8.] As the Court stated in its Order denying Defendants' Motion to Dismiss, it is of course axiomatic that typically, only parties to a contract can be liable for breach. [Dkt. #47 at 23.] However, it is equally well established that non-parties to an agreement can be held liable under contract or quasi-contract theories if they are found to be a mere alter-ego of another party. [*Id.*]

The court may pierce the corporate veil and "disregard the fiction of a separate legal entity to pierce the shield of immunity afforded by the corporate structure in a situation in which the corporate entity has been so controlled and dominated that justice requires liability to be imposed on the real actor . . . ." *Naples v. Keystone Bldg. & Dev. Corp.*, 990 A.2d 326, 339 (Conn. 2010) (quoting *Angelo Tomasso, Inc. v. Armor Constr. & Paving, Inc.*, 447 A.2d 406 (Conn. 1982)); *see also Zaist v. Olson*, 227 A.2d 552 (Conn. 1967) (allowing piercing of corporate veil when a corporation is mere instrumentality or agent of another). Whether the circumstances of a particular case justify the piercing of the corporate veil is a question of fact. *See Naples*, 990 A.2d at 340. Furthermore, "[t]he concept of piercing the corporate veil is equitable in nature," and there is no set rule as to when courts will pierce the veil. *Id.* Although under Connecticut law veil-piercing is not a stand-alone cause of action, Connecticut courts do not require a plaintiff to obtain a judgment before seeking to pierce the corporate veil; courts also pierce the corporate veil where the party invoking the doctrine seeks to extend liability to another defendant. *See Everspeed Enterprises Ltd. v. Skaarup Shipping Int'l*, 754 F. Supp. 2d 395, 404 (D. Conn. 2010) (assessing Connecticut

case law); *see, e.g.*, *Miller v. Guimaraes*, 829 A.2d 422, 432 (Conn. App. Ct. 2003) (affirming the lower court's decision to pierce the corporate veil in order to hold both defendant company and co-defendant company president liable for breach of contract); *Stone v. Frederick Hobby Assoc. II*, No. CV000181620S, 2001 WL 861822, at \*\*6–11 (Conn. Super. Ct. Jul. 10, 2001) (piercing the corporate veil in order to grant a prejudgment remedy against both the corporate and individual defendants).[6]

In Connecticut, courts can disregard the existing corporate structure and pierce the corporate veil under one of two theories: the instrumentality rule or the identity rule. *Naples*, 990 A.2d at 339. The veil may be pierced if the elements of either theory are satisfied. *Id.*

The instrumentality rule requires proof of three elements: (1) control by the first entity over the second to the point of complete domination of finances, policy, and business practice in respect to the transaction at issue, such that the alter-ego at the time had no separate, mind, will or existence of its own; (2) that such control was used dishonestly or unjustly to contravene the plaintiff's legal

---

[6] Defendants attempt to argue that veil piercing is "premature and unripe" at this stage. [Dkt. #69 at 8–9.] The crux of Defendants' argument appears to be that Avant cannot invoke the equitable remedy of veil piercing against Bear Creek Defendants until it has tried and failed to obtain a legal remedy against Strathmore. [*Id.* at 8–9; 11.] As stated above, Defendants are incorrect. The Connecticut Supreme Court case to which Defendants cite in support of their argument is not to the contrary; it merely stands for the proposition that "because corporate veil piercing is an equitable remedy, it should be granted only in the absence of adequate remedies at law." *Comm'r of Envtl. Prot. v. State Five Indus. Park, Inc.*, 304 Conn. 128, 141 (2012), cited in [Dkt. #69 at 8–9.] Here, as Defendants themselves point out in their brief, Avant does not appear to have a legal remedy against the Bear Creek Defendants because they are not signatories to the Letter Agreement. [Dkt. #69 at 6–8.] This fact is precisely what justifies the invocation of equity here.

rights; and (3) that such control and breach of duty proximately caused the plaintiff's injury. *Naples*, 990 A.2d at 339 (citing *Angelo Tomasso, Inc.*, 447 A.2d at 410). In assessing whether an entity is dominated or controlled, courts have looked at factors including "overlapping ownership, officers, directors, personnel" and "common office space, address, [and] phones . . . ." *Id.* (quoting *Litchfield Asset Mgmt. Corp. v. Howell*, 799 A.2d 298, 313 (Conn. App. Ct. 2002), *cert. denied*, 806 A.2d 49 (Conn. 2002)). The second prong of the test requires the plaintiff to establish that this control was used by the defendant "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest or unjust act. . ." *Zaist*, 227 A.2d at 558. The Court notes that the proposed amendment to the Complaint, which appears to concede that Avant "cannot prove per se bad faith or fraudulent conduct based on the allegation that . . . [Strathmore] finalized the subject financing at issue in this matter through the use of alternate business entities," may signify an abandonment of this theory of liability. [Dkt. #77 at 7.]

By contrast, the identity or "alter-ego" rule is generally applied in circumstances where, like here, a plaintiff has alleged that two corporations or companies are, in reality, controlled as one entity "because of the existence of common owners, officers, directors or shareholders, and because of the lack of observance of corporate formalities between the two entities." *Angelo Tomasso, Inc.*, 447 A.2d at 413; *see also Klopp v. Thermal-Sash, Inc.*, 534 A.2d 907, 908 n.3 (Conn. App. Ct. 1987) (identity doctrine primarily used to pierce the veil to reach another corporation). Under the identity rule, the plaintiff is required to show that

13

> there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun, [and that] an adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

*Naples*, 990 A.2d at 339 (citation omitted).  Under the identity rule, all Plaintiff must establish to pierce the corporate veil is that the two corporations are identical or indistinguishable in fact, and that their separate existences must be disregarded to prevent injustice.  *See, e.g.*, *DeMartino v. Monroe Little League, Inc.*, 471 A.2d 638, 641 (Conn. 1984).  Fraud need not be shown in order to disregard the corporate entity where one corporation is used as an adjunct to another corporation.  *Id.*  It is sufficient to show that the two entities must be treated as alter-egos of the other in order to effect a proper disposition of the matter before the court.  *KMart Corp. v. First Hartford Realty Corp.*, 810 F. Supp. 1316, 1328 (D. Conn. 1993).

In the present case, the Court finds that there are material issues of fact which prevent the Court from granting partial summary judgment in Defendants' favor under both the instrumentality rule and the identity rule.  First, the Court finds that under either theory, there is an issue of material fact in dispute regarding the nature of Strathmore's relationship, through its president Mr. Chappelle, with the Bear Creek Defendant entities.  Defendants have admitted that Strathmore, controlled by the sole president and manager Mr. Chappelle, organized and registered BCRP and BCM with the explicit purpose of utilizing the entities to enter into a mortgage agreement with Basis Real Estate Capital II, LLC for, *inter*

14

*alia*, the Property that was the subject of the Letter Agreement between Avant and Strathmore.  [Dkt. #68, Ex.1 at ¶ 22; *id.* at Ex 3, ¶¶ 25, 37; #52 at ¶¶ 21–22.]  BCPII's Articles of Organization were amended at the same time to reflect an identical business purpose.  [Dkt. #52 at ¶ 22; Dkt. #70, Ex. 4 at 1.]  Indeed, BCPII, BCRP and BCM all state a business purpose related to the Property at issue.  [Dkt. #70, Ex. 4 at 1; Dkt. #69, Ex 3-C, Ex. 3-E at 5.]  The resulting Mortgage executed for the Property was then signed by BCPII and BCRP by Strathmore president Mr. Chappelle, acting as president of BCM.  [Dkt. #70, Ex. 3 at 2, 23; *see also* Dkt. #52 at ¶ 24.]  All four Defendants also share Strathmore's business address on W. Saginaw Street in East Lansing, MI.  [Dkt. #52 at ¶ 2; Dkt #69, Ex. 3-C, 3-E; Dkt. #70, Ex. 4 at 1.]  Under an instrumentality theory, these facts raise material questions about the level of control Strathmore exerted over the Bear Creek Defendants at the time the Property financing was secured; namely, whether the Bear Creek Defendants were merely the nominal entities through which Strathmore secured financing for the Property, such that even though BCRP and BCPII are listed as the owners of the mortgage, they did not have a "separate mind, will or existence" of their own.  The same facts raise questions under the identity rule, because they suggest a "unity of interest" that obviates the Bear Creek Defendants' independence with respect to the transaction, and thus their separate identities.

   Defendants' sole basis for claiming that there is no genuine issue of material fact regarding Strathmore's control over, or unity of identity with, the Bear Creek Defendants consists of three basic assertions: that the Bear Creek Defendants

"are distinct legal entities from each other and Strathmore"; that the Bear Creek Defendants "have different entity membership from each other and Strathmore"; and that the Bear Creek Defendants "have separate bank accounts from each other and Strathmore." [Dkt. #68, Ex. 1 at ¶¶ 25–27.] Even ignoring the conclusory, unsupported nature of these statements and assuming they can be supported by admissible evidence, they do not wholly refute Avant's claims. The fact that BCRP and BCM are creatures of the Basis Loan financing obviates the significance of their separate bank accounts: Defendants concede that it was Strathmore that structured these entities, and therefore Strathmore that caused BCRP and BCM to have separate bank accounts. Nor is entity membership or ownership stake dispositive to the question of control and identity: "stock ownership, while important, is not a prerequisite to piercing the corporate veil but is merely one factor to be considered in evaluating the entire situation . . . . It is clear that the key factor in any decision to disregard the separate corporate entity is the element of control or influence exercised by the individual sought to be held liable." *Angelo Tomasso, Inc.* 447 A.2d at 412. For the same reason, Defendants' insistence that it is "eminently ordinary" to create separate single purpose entities to own real estate is also irrelevant. [Dkt. #69 at 12.] Under either theory of veil piercing, "[o]f paramount concern is *how* the control was *used*, not that it existed." *Stone*, 2001 WL 861822, at *9 (emphasis in original).

Defendants also argue that Plaintiff cannot satisfy the second element of the instrumentality rule because "there can be no dispute that there has been no diversion [of assets] to the [Bear Creek Defendants] or secreting of any assets by

16

Strathmore to avoid paying Plaintiff a sum that was shown to be due to Plaintiff from Strathmore." [Dkt. #69 at 12.] However, the second element of the instrumentality rule "merely requires the trial court to find that the defendants committed an unjust act in contravention of the plaintiff's legal rights." *Toshiba Am. Med. Sys., Inc. v. Mobile Med. Sys., Inc.*, 730 A.2d 1219, 1224 (Conn. App. Ct. 1999). Although the "unjust act" is commonly an improper transfer or secreting of assets which renders a corporation a "mere shell with no purpose other than to deny [a plaintiff's] ability to collect a judgment," this is not the only way in which the second element of the instrumentality test can be met. [Dkt. #69 at 11.] The Connecticut Supreme Court has held that "[w]e have found such misconduct [sufficient to satisfy the second element of the instrumentality test], even absent fraud or illegality, when the individual in control has used a corporate instrumentality to avoid personal liability that he had previously assumed." *Campisano v. Nardi*, 562 A.2d 1, 6 (Conn. 1989). Specifically, courts have pierced the corporate veil under an instrumentality theory when a corporate entity was used to avoid liability on a contract. *See, e.g.*, *Saphir v. Neustadt*, 413 A.2d 843 (Conn. 1979); *see also Zaist v. Olson*, 227 A.2d 552 (Conn. 1967).

   Here, the Court finds that there is sufficient evidence in the record to raise material questions regarding whether Strathmore used the Bear Creek Defendants to act as co-borrowers on the Basis Loan in order to subvert Avant's right to a fee under the Letter Agreement. It is undisputed that Avant and Strathmore entered into a Letter Agreement to secure debt financing services for the Property, in exchange for which Avant would be paid a fee. [Dkt. #68, Ex.1 at

¶¶ 5–7; *id.* at Ex. 4-A.] It has also been established that, pursuant to the Letter Agreement, Avant provided a list of potential financing sources to Strathmore, and that this list included two potential investors that Strathmore later pursued independently to obtain financing for the Property. [Dkt. #52 at ¶¶ 10–11, 19–20, 23; Dkt. #70 at Ex. 2-B.] Defendants admit that Strathmore ultimately engaged and secured financing for the same Property named in the Letter Agreement from or through one of these financing sources, and that the Bear Creek Defendants were organized proximate to this time for the sole and express purpose of serving as co-borrowers on the Mortgage. [Dkt. #68, Ex. 1 at ¶ 18–24; Dkt. #52 at ¶¶ 19–23, 35.] Finally, it is undisputed that it is now Strathmore's position that Avant is not owed a fee for this financing because the Bear Creek Defendants were not parties to the Letter Agreement. [Dkt. #69 at 7.] Together, these facts could reasonably support a finding that Strathmore used the Bear Creek Defendants to contravene Avant's legal rights, satisfying the second element of the instrumentality rule, and subsequently the third element of proximate harm, in favor of Plaintiff.

VI.     **Conclusion**

In summary, the evidence before the Court presents a material dispute as to whether the Bear Creek Defendant entities maintained truly independent identities from Strathmore during the course of the transaction that forms the basis of Avant's claims. The Court notes that while there are numerous questions remaining to be resolved with respect to the efficacy of Avant's veil-piercing claim, there are clearly genuine issues for trial. Where there is any

evidence that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied.  For the foregoing reasons, Defendants' [Dkt. #68] Motion for Partial Summary Judgment is DENIED.

                                            IT IS SO ORDERED.


                                            _____/s/_____
                                            Hon. Vanessa L. Bryant
                                            United States District Judge

Dated at Hartford, Connecticut: January 9, 2015